and Paul Thank you. Alright so we did receive the letter indicating that Ms. Hoyer filed bankruptcy yesterday, I guess. So we understand there's a stay in place but that doesn't prevent Ms. Paul from presenting our argument and Mr. Robinson from presenting your argument today. Okay, so we'll proceed. Ms. Paul, you preserved one minute for rebuttal and you can set yourself up there and then thank you. Good morning, my name is Shauna Paul and I'm one of the defendant appellees, I mean sorry, appellants here to state the issues as follows. Number one, did the point, oh I'm sorry, okay, would you like me to start over? Okay, good morning, my name is Shauna Paul and I'm one of the defendant appellants here to state the issues as follows. Number one, did the plaintiff demonstrate strict compliance with either section 1304 of RPAPL, New York's Real Property Actions of Proceedings Law or contractually mandated notice provision pursuant to paragraph 20 of the term subject mortgage loan which both notices provide inconsistent figures as the amounts due and owing on said instruments. Tell me why you believe that that matters. Our case law is very clear that it's the court that determines how much you actually owe, so what the numbers are and whether or not there's some discrepancy, I'm failing to see how there's a legal significance to it. Okay, well there's a legal significance because these cases basically take place often where there's a lot of people who put with the plaintiff. Okay, you're not arguing that there's a fraudulent. Are you still living there? Yes, I'm living there with my three-year-old son, my adopted son, Yvette Boyer, who is elderly, host of medical problems. And you don't dispute that the building has been sold to Gustavia? No, no, but I think it was it was not sold in a proper manner. And you're saying it's not sold in a proper manner because of the discrepancy in the number? There's a number of discrepancies and there was a lot of different evidence that was never able to be... Have you made the payments? It was not about payments because we actually went to camp and we actually tried to, and this is why we were talking about RPAPL, basically because we're where Gustavia Holmes actually started talking about that they claimed they mailed us a notice of default with provisions on March 30th, 2016 for eighty four thousand six hundred and forty nine dollars and seventy three cents. The same day, March 30th, they claimed, 2016, they claimed that they also mailed RPAPL 1304 notice, making for us to make a payment for one hundred and eighty three thousand four hundred and fifty dollars and fifteen cents by June 28, 2016. And it clearly shows that the sum, number one, didn't match up for a hundred thousand dollars to cure that default. Also, the reason why I'm making the claim with the RPAPL is that it makes their claim defective and that's why we were asking for a dismissal or if we can't get a dismissal... Okay, but you're not disputing that you owe some money? We are disputing that we don't owe them any money because, for one, Gustavia Holmes, based that they actually got the assignment of the mortgage from Dream Home Builders, my attorney, Mr. Blackman, and I, I had established some connection with Dream Home Builders and Gustavia Holmes in a title chain. I paid for a number of things to be done. There is nothing that shows that Gustavia Holmes had that. Mr. Blackman filed in his claim where it's Yvette Hoyer versus Bank of America that there is a stipulation that is coming from BSI that also made a claim on record that he filed that says that they held a mortgage around 2012 up until, I believe, they had a chain of selling it all the way up until 2021, I believe, and Gustavia Holmes never, ever, ever had anything to do with that. Also, Gustavia Holmes also claimed that in 2005, which is a company that was actually formulated, formed in 2015 in Florida, that they actually held claim to the mortgage in 2005, which could never be true because both mortgages were originated with First Franklin Bank, which went belly up in September 10th of 2010, where we were still in Supreme Court in a referee-mandated court hearings where we were with Bank of America, LaSalle Bank, First Franklin, and I believe there was like two other banks. Now, there's no way they could have had that. I don't want to interrupt you. The time is up, but you have your one minute for rebuttal, so you can cover anything else you want to cover during that time. Okay? Okay. Thanks. Yep, you can sit right there. All right, Mr. Robinson, you're up. Good morning, Your Honors. May it please the court, my name is Owen Robinson. I represent Gustavia Holmes, LLC. The issue that they're raising here is a purported difference in the figures that were provided in the 30-day contractually required notice of default and the statutorily required 90-day notice. I mean, I can, it's a fairly easy explanation. The 30-day notice, which contained the figure in the amount of $84,000 and change, that was the arrears. That was the eight, that was constituted the eight years, nearly eight years of the figure in the 90-day notice of $183,000 was the total amount that was due, principal, interest, any advances, things of that nature. But, I'd like to bring the court's attention, to the court's attention, that since these briefs have been filed, the Appellate Division Second Department has ruled in the matter of emigrant against Seymour Cohen, 205 AD 3rd 103, that alleged discrepancies or inaccuracies in the stated amount due of a defaulted, of the stated amount due, nevertheless satisfied RPAPL 1304, and any dispute must await the party's later litigation. And it cites to the case, to the, to the decision that's being appealed here today, to, to bolster that, that holding. Also, the matter of PNC against Halal, H-E-L-A-L, 210 AD 3d 1123, the court also, the Appellate Division, also found that 1304, the 90-day notice, is non-jurisdictional and the, the issue of the figures will be addressed at a later time in the litigation. So, it was respectfully submitted that the, the claim that the, of purported confusion of numbers or... So, you're saying that the discrepancy does not eliminate the obligation, even if there were a discrepancy? Correct. It's going to be determined later on when a, when a referee is appointed by the court. But it's not, you know, for purposes of comment, obviously the 30-day letter and the 90-day notice are required to be provided before the action can be commenced. But... So, you, you argue that the fact of both of those also complies with the notice requirement that she's claiming wasn't done properly. Is that right? That's correct. Unless the court has any other questions. No, thank you. Thank you. Ms. Paul, you have your one minute and rebuttal. So, we never received any notices, period, from Gustavia Holmes, which was stated in our first court case in the district court with the magistrate. That, that was actually held in 2007, I think 2017. It's there in the documentation. Gustavia Holmes admitted in that particular court hearing that they never felt the need to give us any kind of notices to, to let us know that they had the mortgage or even tried to have the mortgage. They have an affidavit that is also stated here within this, within the brief, that says that Mr. Jared Dottoli was one of the plaintiffs to support the motion in summary judgment and that his, his affidavit was that he gave Gustavia Holmes, servicer SN Corp, servicing corp, the RP APL 1304 in paragraph 20 notices, which is a contradiction because if they gave it to them, how can they say that they actually gave it, that Gustavia Holmes gave it to us? We never received anything. Furthermore, Gustavia Holmes, when they even came to us, we were still having a court hearing within the Supreme Court. They were supposed to return to the Supreme Court where they went and filed in the district court and that's where Pamela K. Chen, Judge Pamela K. Chen, stated that we waived our rights to be able to answer the, the motion. All right. Thank you, Ms. Paul, for coming in today. Thank you, Mr. Robinson, the reserved decision. And Mr. Robinson, obviously you will promptly advise the court when Ms. Goyer's bankruptcy proceeding is complete, so we're, right? All right. Thank you. Have a good day.